IN THE SUPREME COURT OF MISSISSIPPI
NO. 92-CA-00310-SCT

*THOMPSON MACHINERY COMMERCE CORPORATION, A TENNESSEE CORPORATION*

*v.*

*STEVE WALLACE*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | FEB. 7, 1992 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GUY W. MITCHELL, III |
| | MARTHA BOST STEGALL |
| ATTORNEY FOR APPELLEE: | GEORGE E. DENT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART AND REMANDED IN PART - 1/9/97 |
| MOTION FOR REHEARING FILED: | 12/12/95 |
| MANDATE ISSUED: | 1/16/97 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. The original opinions in this case are withdrawn and these opinions are substituted therefore.

¶2. This case is appealed from a verdict of $33,336 in the Circuit Court of Lee County against Thompson Machinery Commerce Corporation (Thompson) in favor of the appellee, Steve Wallace (Wallace), on February 7, 1992.[1] From this adverse decision, Thompson appeals to this Court, raising three issues:

> *I. Did the trial court err in allowing the entire deposition of Clinton Bailey?*
>
> *II. Was the verdict contrary to the overwhelming weight of the evidence?*
>
> *III. Was the verdict contrary to law?*

¶3. Wallace filed a cross-appeal, in which he raised the following issue:

### IV. Did the trial court err by denying prejudgment interest?

¶4. After careful review, we find that the issues raised by Thompson are without merit and we hereby affirm the trial court's judgment as to them. However, as to Wallace's cross-appeal, we find that the court should have granted prejudgment interest. Accordingly, we send this matter back for further determination concerning the prejudgment interest.

¶5. Thompson Machinery is a Caterpillar dealership servicing North Mississippi. Steve Wallace was the president of Thompson Machinery, and as such, he had access to sales, financial, and customer records. Wallace served in this capacity until his resignation on August 3, 1988, at which time he agreed to serve as a consultant to Thompson for the six months following his resignation. Thompson agreed to pay Wallace the same gross monthly salary of $8,334.

¶6. Two months later, in October 1988, Wallace began work as vice-president and general manager for Barton Equipment Company, a competitor of Thompson which sold John Deere Equipment. Upon learning about this, Thompson stopped paying Wallace. Wallace then sued Thompson for the balance of four unpaid installments on his salary, totaling $33,376, plus interest. At trial, Thompson won a jury verdict on the amount of unpaid installments, but he did not receive prejudgment interest.

### I. Whether the verdict was contradictory to the law

**¶7.** Thompson contends that an employee cannot work for two employers, where one job places the employee as a competitor of the other employer. However, Thompson's argument is flawed because it confuses the consulting agreement with an employer/employee relationship. Wallace agreed to continue his relationship with Thompson Machinery as a consultant and not as an employee. His affiliation with Barton Equipment, therefore, can hardly be construed as a breach of the "consulting contract."

¶8. The Third Edition of the American Heritage Dictionary defines "consult" as "to work or serve as a consultant: *a retired executive who consults for several large companies."* Wallace's oral agreement with Thompson Machinery, as memorialized in his letter of resignation, provided that "Per our agreement, I will remain with you for six months **in a consulting capacity** at the gross rate of pay that existed **prior to my resignation**." (emphasis added). Thompson's announcement of Wallace's departure reiterates his understanding of the meaning of the agreement, stating in relevant part:

> I regret to announce that Steve Wallace has elected **to resign** as President of Thompson Machinery of Mississippi. Steve **will be pursuing another opportunity** but has agreed to remain with us for six months **in a consulting capacity**.

> . . .

> Although we are sorry to see Steve leave us, I know you will want to join me in wishing him the best of luck **with his future endeavors**. (emphasis added).

¶9. Wallace had resigned from the company and was serving only in a consulting capacity. There was no employer/employee or master/servant relationship for Wallace to breach. Based on the facts, the jury made a proper determination regarding the existence of such a relationship.

¶10. Although the record reveals little about the specific terms of the oral agreement between Wallace and Thompson Machinery, the highlighted sections of the above-referenced correspondence indicate that both parties understood that Wallace had resigned from his position with Thompson, that he would continue to serve in a consulting capacity for six months, and that he was immediately pursuing a new business opportunity. There is no indication that he entered any agreement, orally or otherwise, not to compete with Thompson Machinery. In *ACI Chemicals, Inc. v. Metaplex, Inc*., 615 So. 2d 1192 (Miss. 1993), where two former employees of ACI had refused to sign non-competition agreements, we acknowledged that absent such an agreement, an individual was free to compete with a former employer as long as none of the former employer's trade secrets were violated. So finding, we stated:

> Absent a covenant not to compete, it is not wrongful for an employee to terminate his employment and accept a position with a competitor, unless, of course, the latter lures him away for the purpose of acquiring a trade secret.

> An employee, upon the termination of his employment, is free to draw upon his general knowledge, experience, memory and skill, howsoever gained, provided he does not use, disclose or impinge upon any of the secret processes or business secrets of his former employer. This rather piously oversimplified principle is much easier to state than to apply.

*ACI Chemicals*, 615 So. 2d at 1195 (citation omitted).

¶11. Thus, Wallace, having terminated his employment with Thompson and having not entered a non-competition agreement, was free to pursue his new endeavors. He was a consultant and not an employee. As to this assignment of error, we affirm the trial court's decision.

## II. Whether the verdict was contrary to the overwhelming weight of the evidence

*¶12.* In reviewing a jury verdict, this Court resolves all conflicts of evidence in the appellee's favor and determines all reasonable inferences from testimony given towards the appellee's position. *Alldread v. Bailey*, 626 So. 2d 99, 101 (Miss. 1993). Reversal occurs only where the facts presented are so overwhelming in the appellant's position that reasonable jurors could not have found for the appellee. *Wilmoth v. Peaster Tractor Co.*, 544 So. 2d 1384, 1386 (Miss. 1989).

¶13. Thompson and Wallace had conflicting interpretations to the agreement reached when Wallace left Thompson. Wallace called the agreement a severance or separation package not prohibiting work with another employer. Thompson asserted that the agreement was a consulting contract, precluding employment with a competitor under conflict of interest.

¶14. There is sufficient evidence to find that a reasonable juror could disagree as to what this agreement was. Wallace asked for severance pay at his last meeting with DeWitt Thompson. Thompson testified that he intended these payments to provide protection against financial losses arising through Wallace's resignation. More importantly, even though DeWitt Thompson requested

that Wallace style the agreement as a "consulting agreement," DeWitt did not preclude employment by using non-competition language. DeWitt testified that he failed to do so because he was instructed that such non-compete agreements were unenforceable. Therefore, a reasonable juror could find that this agreement was one of separation which did not preclude Wallace from working with a competitor.

### III. Whether Clinton Bailey's entire deposition should have been allowed

¶15. The trial court granted a motion in limine limiting proof to matters before February 3, 1989, which was the last day of the Thompson-Wallace consulting agreement. Thompson wished to admit parts of Clinton Bailey's deposition concerning his opinion of Wallace working for Barton while consulting. Wallace moved to have Bailey's separation package introduced to help explain Bailey's opinion. However, Bailey had left Thompson in June 1989, and admission of the separation package would have violated the motion in limine. The trial court resolved the problem by admitting the entire deposition, over objection.

¶16. Thompson argues that the trial judge committed error by admitting evidence which earlier would have been excluded under the motion in limine. The trial court reserves the right to revisit any motion in limine ruling if the evidence develops in a manner which the court could have concluded that other evidence is relevant. *Gifford v. Four-County Elec. Power Ass'n*, 615 So. 2d 1166, 1172 (Miss. 1992). *See also* **State v. Swann**, 370 S.E.2d 533, 545 (N.C. 1988).

¶17. The standard of review regarding admission of evidence is abuse of discretion. Parties may liberally cross-examine proffered witnesses regarding bias and interest. *Hall v. Hilbun*, 466 So.2d 856, 875 (Miss. 1985). Likewise, a party may cross-examine a witness on the basis of his opinion. *Morley v. Jackson Redevelopment Auth.*, 632 So. 2d 1284, 1294 (Miss. 1994); *State Highway Comm'n of Mississippi v. Havard*, 508 So.2d 1099, 1102 (Miss. 1987). This Court cannot say that the trial evidence of Bailey's separation package was irrelevant, because it may have either created an issue of bias or interest or formed a basis of Bailey's opinion. The trial court did not abuse its discretion in reconsidering its earlier ruling on the motion in limine.

### IV. Whether the trial court correctly denied prejudgment interest

¶18. As to the appellee's cross-appeal, the trial court denied Wallace pre-judgment interest on the breach of contract. Wallace asserts that he was entitled to prejudgment interest, as the unpaid amounts of money under the contract constituted liquidated damages payable when the lawsuit commenced.

¶19. Prejudgment interest arises only where the amount owed is liquidated, or denial of the amount owed is in bad faith. *Simpson v. State Farm Fire & Casualty Co.*, 564 So. 2d 1374, 1380 (Miss. 1990). "As to whether a claim is liquidated, interest has been denied where 'there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor.'" *Id.* (citation omitted). The plaintiff must make a proper demand or request for prejudgment interest, including from when it is allegedly due, in the pleadings. *Id.* (citation omitted).

¶20. The request for interest from and after the due dates of October 31, November 30, December 31, 1988 and January 31, 1989 was properly included in Wallace's complaint. The remaining question

is whether the amount due Wallace was liquidated when he originally made his claim. The complaint alleged, and Thompson admitted in its answer, that Wallace was to receive the sum of $8,334 per month for six months. Further, there is no question that Wallace received the amounts for two months, but never received the final four months' payment. This constitutes a liquidated claim, and as such, the trial court erred in not allowing prejudgment interest.

## CONCLUSION

¶21. Judgment is hereby affirmed as to the direct appeal. As to the cross-appeal, this matter is remanded to the trial court for imposition of judgment consistent with this opinion.

¶22. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**SULLIVAN, P.J., PITTMAN, BANKS AND MILLS, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., ROBERTS AND SMITH, JJ.**


### PRATHER, PRESIDING JUSTICE, DISSENTING:


¶23. Because the trial verdict in favor of Wallace was contrary to law, I respectfully dissent. Wallace breached his contractual duty of good faith and fair dealing by commencing employment with a competitor while under contract with Thompson Machinery. I would, therefore, reverse and render judgment in favor of Thompson Machinery.

¶24. The majority, citing the American Heritage Dictionary, places great importance on its conclusion that Wallace was a consultant and not an employee. The record clearly demonstrates that Wallace was employed by Thompson Machinery to consult or answer questions about the terms of specific customer accounts and other business, for which Wallace was solely responsible during his presidency of the company. By his own admission, Wallace understood that he was to be available to answer "any question" posed by Thompson Machinery during the contractual period.

¶25. Wallace obviously contracted with Thompson Machinery to serve as a consultant; however, this Court need not determine whether Wallace was an "employee" of Thompson Machinery in order to resolve this case. Rather, this case is governed by the general law of contracts, which imposes on the parties a duty of good faith. *UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc.*, 525 So. 2d 746, 757 (Miss. 1987); Restatement (Second)of Contracts § 205. Therefore, the majority's poorly supported conclusion that Wallace was not an employee is unimportant to the proper disposition of the case, and this dissent will not address the soundness of that conclusion. Regardless of whether Wallace was an employee, he was clearly a party to a contract.

¶26. Mississippi law dictates that "if the breach of contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract, such a breach will discharge the other party from performance of his

promise." *Matheney v. McClain*, 161 So. 2d 516, 520 (Miss. 1964); *UHS-Qualicare*, 525 So. 2d at 756. "Moreover, a party who has breached a contract may not himself maintain a suit for breach of the contract against the other party." *Snow Lake Shores Property Owners Corp. v. Smith*, 610 So. 2d 357, 361 (Miss. 1992).

¶27. Undisputedly, the consulting agreement required Wallace to be available to answer "any question" posed by Thompson Machinery. Although Wallace was no longer employed as president of Thompson Machinery, Wallace clearly contracted to perform consulting services at his regular rate of pay. Wallace then accepted employment with Thompson's competitor, Barton Equipment. Even Wallace admitted that his dealings on behalf of Barton Equipment "did not help" Thompson Machinery. This admission demonstrates that Wallace could not in good faith accept employment with Barton Equipment while simultaneously accepting payment from Thompson Machinery in accordance with the consulting agreement.

¶28. The fact that Thompson Machinery no longer wished to discuss confidential company business with Wallace is more than understandable; in fact, it was good business not to discuss such matters with employees of one's competitor. Reasonable construction of the agreement, as well as common sense, dictate that Wallace's undivided loyalty and goodwill were "vital" to the existence of the consulting contract. *See UHS-Qualicare*, 525 So. 2d at 756; *Matheney*, 161 So. 2d at 520. This is particularly true in the light of the fact that Wallace, by virtue of agreeing to serve as consultant, had a duty to deal with Thompson Machinery fairly and in good faith. *UHS-Qualicare*, 525 So. 2d at 757. Furthermore, Wallace cannot contend that Thompson Machinery breached the consulting agreement by not paying him when, in fact, Wallace had already breached the contract by going to work for a competitor. *See Snow Lake*, 610 So. 2d at 361. For these reasons, the verdict in this case was contrary to the law, and the judgment should be reversed and rendered. Therefore, I respectfully dissent.

**LEE, C.J., ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**

1. The original opinion was published on November 16, 1995. A motion for rehearing was granted, and, as a result, the original opinion is to be withdrawn and this opinion is substituted.