# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-01389-SCT

*HERBERT E. BLANTON AND BARBARA M. BLANTON*

*v.*

*BOARD OF SUPERVISORS OF COPIAH COUNTY, MISSISSIPPI AND BILLY MATHIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/22/96 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANTS: | JOHN H. DOWNEY |
| ATTORNEYS FOR APPELLEES: | JAMES D. SHANNON |
| | T. HARRIS COLLIER, III |
| | ROBERT W. LAWRENCE |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 8/20/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/10/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This case comes before this Court from a Special Court of Eminent Domain in Copiah County, Mississippi. On January 29, 1996, the Board of Supervisors of Copiah County, (hereinafter "Appellees") filed a Petition for a Special Court of Eminent Domain. The Appellees sought to condemn 2.69 acres of real property belonging to Herbert E. and Barbara M. Blanton (hereinafter "Appellants"), to be used in the widening of a county road.

¶2. A hearing was held on this matter on April 19, 1996, and the court granted the Appellees the right to immediate title and possession of the property. The only issue left for trial was that of damages. On May 17, 1996, the matter was noticed for trial on July 30, 1996. On July 15, 1996, the Appellants moved for a continuance. An order was filed on August 27, 1996 and set the case for hearing on November 18, 1996. On August 29, 1996, the Appellees noticed the depositions of the

Appellants' appraiser, Connley D. Moak ("hereinafter Moak"), for September 25, 1996.

¶3. In response to the information provided in Moak's deposition and his appraisal report, the Appellees filed a motion in limine on November 7, 1996. The motion sought to prevent Moak from testifying as to elements of damage considered by the Appellees to be improper and inadmissable.

¶4. A hearing on the motion in limine was set for November 15, 1996. In response to the Appellees' motion in limine, Moak filed an amended appraisal report on November 12, 1996. The Appellees objected to Moak's amended report on the grounds that it was not "seasonably supplemented" according to Rule 26(f) of the M.R.C.P. The Appellees complained that the new report, received six days before the trial, was unfair surprise. The Appellants proposed that the new information was minimal and that there was no surprise or prejudice to the Appellees.

¶5. At the motion in limine hearing on November 15, 1996, the Appellees sought to have the court prevent Moak from testifying about certain specific elements of damage. The Appellees asserted that items such as aesthetic damage, access to the property, availability of parking space, and an increase in noise or traffic were not compensable as separate items of damage, but only insofar as they affected the fair market value of the remainder after the taking. Two (2) of the major costs to cure included the cost to move the Appellants' house back from the road ($12,000) and to replace trees and shrubs ($24,000). The Appellees argued that these individual elements of damage could not be considered under the before and after rule. The Appellants argued that Moak's inclusion of the expenses of moving the house and replacing the trees and shrubs were permissible cost to cure elements of damage.

¶6. On the morning of the trial, November 18, 1996, the trial judge ruled on the Appellees' motion in limine and held that Moak's initial appraisal was not a proper measure of damages. The trial court found that Moak's report did not reflect the value of the overall property before and after the taking, but instead listed individual items of damage. The lower court also excluded Moak's supplemental report as it was untimely filed. Since the bulk of Moak's testimony had been excluded, the Appellants did not call the appraiser to testify in the trial to determine damages. The jury awarded the Appellants $6,050 in total damages and compensation for the condemned 2.69 acres. Aggrieved by the trial judge's ruling on the motion in limine, the Appellants raise the following points of error to this Court:

> **I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED THE APPELLEES' MOTION IN LIMINE, AS THE EXCLUDED EVIDENCE WAS ADMISSIBLE.**

> **II. THE SUPPLEMENTAL APPRAISAL WAS SEASONABLY DELIVERED AND DID NOT UNFAIRLY SURPRISE OR PREJUDICE THE APPELLEES AS THE NEW INFORMATION IT CONTAINED WAS MINIMAL**.

¶7. This Court finds that the Appellants' cost to cure items in the initial appraisal were improper and correctly excluded by the lower court. The Appellants claimed that they were attempting to mitigate damages, but their initial appraisal did not adhere to the before and after rule. Additionally, the supplemental report filed by the Appellants was not seasonable because its admission would have prejudiced the Appellees by preventing them from preparing an adequate defense. Therefore, the lower court's granting of the Appellees' motion in limine was correct and its holding is affirmed.

## STATEMENT OF FACTS

¶8. The Appellants' property consisted of 431 acres on Mathis Road near Crystal Springs, in Copiah County, Mississippi. The Appellees condemned 2.69 acres of this property in order to widen Mathis Road from 18 to 22 feet while obtaining a right-of-way 50 feet from either side of the road's centerline in the area of the Appellants' residence. The proposed widening of the road brought the new right-of-way within 11 feet from the porch of the Appellants' residence.

¶9. A trial was required in order to determine the damages. Both parties hired appraisers to determine the value of the property taken. The Appellees hired Hugh Hogue (hereinafter "Hogue") and the Appellants hired Connley Moak. As required by law, both appraisers filed a statement of values.

¶10. Hogue's appraisal, which valued the land taken at $750 per acre, added a nominal sum for temporary construction easements, and included $3,925 in cost to cure items. The items included the replacement of fencing and $1,000 for landscaping and replacement of a residential fence. Hogue basically appraised the total value of the property before the 2.69 acres was taken and after the land was taken to arrive at the overall damages owed to the Appellants. Hogue's total estimate of damages was $6,050.

¶11. Moak valued the land taken at $1500 per acre. Additionally, his original appraisal estimated the damage to the remainder of the property at $42,819.50 which included the following cost to cure items:

    1. Cost to move house: $12,000

    2. Cost to cure trees and shrubs: $24,250

    3. Cost to cure fences and gates: $5,569.50

    4. Cost to repair crop fields: $1,000

    Total: $42,819.50

¶12. Moak's report reflected that the new road being 11 feet from the front of the house would render it virtually valueless. Therefore, Moak proposed that the house should either be moved back from the road or purchased by the Appellees. However, in his initial appraisal report, Moak did not state an actual value of the residence.

¶13. In response to Moak's initial appraisal report, the Appellees filed a motion in limine on November 7, 1996. The Appellees sought to exclude the above-mentioned cost to cure items of damage as they did not comport with the before and after rule used in eminent domain valuation.

¶14. On Tuesday, November 12, 1996, six days before trial, Moak filed a supplemental appraisal report. This supplemental report basically included the following:

(1) an estimated value of the house and one acre home site at $30,000 before the taking;

(2) the set back of most houses in the subject neighborhood (30 feet);

(3) no market sales of houses located within eleven feet of a street right-of-way were found;

(4) an estimated value of the house after taking at $2,000 - $3,000;

(5) replacement landscaping at $3,000; and

(6) a new gravel drive and parking area after the house is moved at $1,500.

The new report lowered the cost to cure damages from $42,819.50 to $23,069.50. The change in value resulted primarily from a $21,000 decrease in the estimated cost to cure trees and shrubs. In his new report, Moak also valued the house at $30,000 prior to the taking and $3,000 after the taking. On that basis, Moak claimed that it would be cheaper for the Appellee to pay $12,000 to move the house than $30,000 to buy it.

¶15. On November 18, 1996, the morning of the trial, the trial judge orally ruled on the motion in limine. The court held that Moak's supplemental report was a major deviation from his original report and untimely filed such that it would prejudice the Appellees if admitted. The court further ruled that the cost of moving the residence and landscaping were not proper elements of damages and would not be allowed.

¶16. As the majority of Moak's testimony was precluded by the motion in limine, the Appellants chose not to call him to testify in the trial to determine damages. The jury awarded the Appellants $6,050 in total damages and compensation for the taking of the 2.69 acres. From that decision, the Appellants bring their claim before this Court.

## DISCUSSION OF THE ISSUES

### I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED THE APPELLEES' MOTION IN LIMINE, AS THE EXCLUDED EVIDENCE WAS ADMISSIBLE.

¶17. The Appellants' first assignment of error is that the cost to cure damages listed by Moak in his initial appraisal were admissible and should not have been excluded by the trial court.

¶18. In eminent domain proceedings in Mississippi, the before and after rule is used to determine the compensation due a landowner when a portion of his property is taken through eminent domain. *Mississippi State Highway Comm'n v. Hillman*, 189 Miss. 850, 198 So. 565 (1940). In *Hillman*, this Court said the following:

> When part of a larger tract of land is taken for public use, the owner should be awarded the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately after the taking, without considering general benefits or injuries resulting from the use to which the land taken is to be put that are shared by the general public.

*Hillman*, 189 Miss. 866, 198 So. at 569. This has become known generally as the "before and after rule." *See State Highway Comm'n of Mississippi v. Havard*, 508 So. 2d 1099 (Miss. 1987).

¶19. One mandate under the before and after rule is that items such as increased noise due to traffic or increased proximity to a highway may not form the basis of separate and distinct elements of damage. *Havard*, 508 So. 2d at 1101 (citations omitted).

¶20. As this Court stated in *Mississippi State Highway Comm'n v. Hall*:

> The 'before and after rule' swallows and absorbs all of the damages of every kind and character, and while it is proper to put on evidence of special items so that the jury can properly determine the 'after' value, it is not proper to comment on any particular aspect of the damages in the instructions.

*Mississippi State Highway Comm'n v. Hall*, 252 Miss. 863, 874, 174 So. 2d 488, 492 (1965).

¶21. In the present case, the initial appraisal submitted by the Appellants reflected the certain "costs to cure." As mentioned above, one of the major costs was that of moving the house back from the new roadway ($12,000).

¶22. The Appellants' appraiser, Moak, claimed in his initial report that the new road being 11 feet from the front of the house would severely and adversely affect its market value. Therefore, Moak proposed that the house should either be moved back from the road or purchased by the Appellees. However, in his initial appraisal report, Moak did not state a value of the residence.

¶23. While the decreased value of the home was relevant to the overall diminution in value of the property, under the before and after rule it cannot be considered as a separate item of damage.

¶24. The Appellants claimed that the costs to move the home were relevant, despite the before and after rule, because the Appellants' were to attempting to mitigate damages. This mitigation represented the difference in the fair market value of the home versus the cost to move it. The Appellants contended that it would be cheaper for the Appellees to move the home than pay the fair market value for it.

¶25. We disagree. The Appellants' appraisal did not contain a value of the residence based on comparable sales in the area. Therefore, the Appellants' assertions concerning the mitigation of damages were moot because they offered no proof of damages in the first place. Further, the Appellants failed to cite a single precedential authority to support their position that expenses incurred in mitigating damages in eminent domain cases can be considered exclusive of the before and after rule.

¶26. Therefore, this Court holds that the trial court properly excluded the "cost to cure" items listed in Moak's initial appraisal report, including the cost to move the home, because they did not comport with the before and after rule. The motion in limine was properly granted and does not constitute error. This claim is denied.

### II. THE SUPPLEMENTAL APPRAISAL WAS SEASONABLY DELIVERED AND DID NOT UNFAIRLY SURPRISE OR PREJUDICE THE APPELLEES AS THE NEW INFORMATION IT CONTAINED WAS MINIMAL.

¶27. The Appellants' second assignment of error hinges on the trial court's exclusion of Moak's

supplemental report. The lower court held that the report was not timely filed according to M.R.C.P. 26(f) as it was submitted six (6) days before trial. The Appellants assert that the additional information provided in the report was minimal and its admission would not have surprised or prejudiced the Appellees.

¶28. Rule 26(f) of the M.R.C.P. concerning supplementation of discovery responses reads in relevant part:

> (1) A party is under a duty **seasonably to supplement** his response with respect to any question directly addressed to

> (B) the identity of each person expected to be called as an expert witness at trial, **the subject matter on which he is expected to testify,** and the substance of his testimony.

M.R.C.P. 26(f)(1)(B) (1997) (emphasis added).

¶29. In *Eastover Bank for Savings v. Hall*, 587 So. 2d 266, 272 (Miss. 1991), we stated that, "[t]his Court has laid down no hard and fast rule as to what amounts to seasonable supplementation or amendment of answers."

¶30. In *Motorola Communications & Electronics v. Wilkerson*, 555 So. 2d 713 (Miss. 1989), this Court held that supplementation made ten (10) days prior to the trial date was seasonable. We emphasized that the requirement that interrogatories be seasonably supplemented ensures that, "a sufficient amount of time is allotted before trial to completely deal with the scope of the planned testimony of an 'eleventh hour' expert witness." *Motorola*, 555 So. 2d at 718.

¶31. In *Jones v. Hatchett*, 504 So. 2d 198 (Miss. 1987), we ruled that the trial court erred in allowing an expert doctor to testify when his name had been revealed four (4) days before trial, and no information was provided on the subject matter of his testimony. We further stated that, "[t]he very purpose of our civil discovery procedures is to prevent such trial by ambush." *Jones*, 504 So. 2d at 201.

¶32. Under M.R.C.P. 37(d), "[i]f a party . . . fails . . . to serve answers or objections to interrogatories . . . after proper service of interrogatories . . . the court in which the action is pending on motion may . . . take any action authorized under . . . this rule." We have also held that, "[t]he power to dismiss for violations of rules of procedure 'is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket'." *Palmer v. Biloxi Reg'l Med. Ctr., Inc.* 564 So. 2d 1346, 1367 (Miss. 1990) (*quoting Watson v. Lillard*, 493 So. 2d 1277, 1278 (Miss. 1986)). In the case *sub judice*, Moak filed a supplemental report to his appraisal six (6) days prior to trial. In defense of the supplemental report, the Appellants said the following:

> 1. Once the Board's attorneys received Moak's initial appraisal giving his opinion that it would be more practical to move the house than to make the Board buy it, the Board did in fact depose Moak and made no effort to obtain additional information via motion to compel, supplemental interrogatories, etc. regarding his opinion . . . .

> 2. The Court never entered any Order to Compel, and the Blantons in fact did not violate,

willfully or otherwise, any discovery obligation.

3. There was no effort on the part of the Blantons or the undersigned to obfuscate or deprive the Board of information so as to surprise the Board at trial.

4. . . . the November 12 supplementation, in our opinion, was not significant enough to prejudice the Board . . . .

¶33. The report was faxed to counsel for the Appellees on Tuesday, November 12, 1996. At the hearing on the Appellees' motion in limine on November 15, 1996, an objection was raised by Appellees' counsel that supplementation was not timely. The Appellees argued that they would be prejudiced due to lack of notice and unfair surprise if the report was ruled to be admissible. The Appellees declared that they would not have enough time to review and investigate the report or further depose Mr. Moak concerning his opinions. They further asserted that their appraiser, Mr. Hogue, lived out of town and had other commitments which would prevent him from adequately reviewing the supplemented opinions.

¶34. This Court has declined to delineate a bright-line test to determine if a discovery supplementation is "seasonable." However, while precise time limits have not been defined, the purpose of the seasonable requirement is clear - to prevent unfair surprise and trial by ambush which would prejudice the other party. Therefore, seasonableness must be determined on a case by case basis looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit.

¶35. In the present case, Moak's supplemental appraisal, which was filed six (6) days before trial, was not seasonable under Rule 26(f). We agree that the Appellants' supplemental report did not contain information which was radically different from the first appraisal.

¶36. However, it appears from the record that the Appellants' second appraisal was filed in response to the Appellees' motion in limine. The Appellants realized that their first appraisal failed to follow the before and after rule concerning the cost to cure items of damage. In an effort to revive these costs to cure, the Appellants filed their supplemental report.

¶37. While this information may not have surprised the Appellees, its admission would have prejudiced them. In order to adequately refute the Appellants' supplemented evidence, the Appellees would have been required to gather comparable sales, confer with their out-of-town appraiser, and make other trial preparations - all in six (6) days including the weekend. In another case, six (6) days might have been seasonable. Yet, in this instance, the inherent complexity of an eminent domain proceeding coupled with the crucial nature of the appraiser's report, requires a finding that the supplemental report was untimely filed.

¶38. Therefore, the trial judge's exclusion of the supplemental report was proper. Although the Appellants did not violate a court order when filing their supplemental report, they did violate the rules of procedure. Thus, it was well within the trial judge's discretion to exclude the supplemental report.

## CONCLUSION

¶39. The Appellants' cost to cure items in the initial appraisal were properly excluded by the lower court. Although the Appellants argued that they were trying to mitigate damages, their initial appraisal failed to follow the before and after rule in order to properly express those damages. Further, the supplemental appraisal filed by the Appellants was not seasonable because its admission would have prejudiced the Appellees by denying them adequate time to prepare a defense. Therefore, the lower court was correct in its granting of the Appellees' motion in limine and its holding is affirmed.

¶40. **JUDGMENT IS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**